NO. 23-10515

# United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant-Appellant*,

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

## PETITION FOR PANEL REHEARING

Date of Decision: July 17, 2023
Panel: Smith, Southwick, and Wilson

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..... ii
TABLE OF AUTHORITIES ..... iii
INTRODUCTION ..... 1
STATEMENT OF THE ISSUES ..... 3
STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE ..... 4
ARGUMENT AND AUTHORITIES ..... 8
I. This Panel's Decision Conflicts with Longstanding Precedent That Orders Authorizing a Receiver to Sell Property Are Immediately Appealable. ..... 10
II. The Panel Decision Also Conflicts with this Court's Precedent Holding That One Panel Cannot Overrule Another. ..... 13
III. After Reversing the Dismissal of the Appeal for Lack of Jurisdiction, the Court Should Summarily Vacate and Remand the District Court's Order Authorizing the Illegally-Appointed Receiver to Sell Property. ..... 15
CONCLUSION ..... 17
Certificate of Filing and Service ..... 19
Certificate of Compliance ..... 20

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Barnes v. Alabama*,
578 U.S. 994, 136 S. Ct. 2446, 195 L. Ed. 2d 259 (2016) .................... 16

*In re Bonvillian Marine Serv., Inc.*,
19 F.4th 787 (5th Cir. 2021) .................... 15

*Broussard v. S. Pac. Transp. Co.*,
665 F.2d 1387 (5th Cir. 1982) .................... 2, 15

*Burge v. Parish of St. Tammany*,
187 F.3d 452 (5th Cir. 1999) .................... 2, 9, 13

*Grabowski v. Jackson Cnty. Pub. Defs. Office*,
47 F.3d 1386 (5th Cir. 1995) .................... 14

*Johnson v. Moral*,
843 F.2d 846 (5th Cir. 1988) .................... 15

*Kenemore v. Roy*,
690 F.3d 639 (5th Cir. 2012) .................... 16

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .................... 10, 11

*Netsphere, Inc. v. Baron*,
799 F.3d 327 (5th Cir. 2015) .................... *passim*

*Sage v. Cent. R. Co. of Iowa*,
96 U.S. 712 (1877) .................... 10

*SEC v. Barton*,
72 F.4th 640 (5th Cir. 2023) .................... 3

*SEC v. Barton*,
No. 22-11132, Published Opinion On Petition for
Rehearing (5th Cir. Aug. 31, 2023) .................... 3, 6

Case: 23-10515    Document: 158-2    Page: 4    Date Filed: 08/31/2023

*SEC v. Barton*,
No. 22-11226, 2023 WL 4060191 (5th Cir. June 19, 2023) .............. 1, 7

*Securities and Exchange Comm'n v. Janvey*,
404 F. App'x 912 (5th Cir. 2010) ................................................ *passim*

*Sheppard v. Louisiana*,
140 S. Ct. 2712, 206 L. Ed. 2d 850 (2020)........................................... 16

*United States v. "A" Manufacturing Co., Inc.*,
541 F.2d 504 (5th Cir. 1976)....................................................... *passim*

*United States v. Castro-Alfonso*,
841 F.3d 292 (5th Cir. 2016)................................................................ 14

*United States v. Dial*,
542 F.3d 1059 (5th Cir. 2008)............................................................ 14

*United States v. Setser*,
607 F.3d 128 (5th Cir. 2010)................................................. 2, 9, 13, 14

**Other Authorities**

Fifth Circuit Internal Operating Procedure 35........................................ 2

## INTRODUCTION

The Commission's motion to dismiss the appeal was based entirely on an unpublished opinion from a merits panel of this Court finding that a district court order authorizing a receiver in this matter to sell property is not immediately appealable. *SEC v. Barton*, No. 22-11226, 2023 WL 4060191, at *1 (5th Cir. June 19, 2023). That unpublished decision directly conflicted with three decisions of this Court. *United States v. "A" Manufacturing Co., Inc.*, 541 F.2d 504 (5th Cir. 1976); *Securities and Exchange Comm'n v. Janvey*, 404 F. App'x 912, 914 (5th Cir. 2010); *Netsphere, Inc. v. Baron*, 799 F.3d 327, 333-34 (5th Cir. 2015) (hereinafter "*Netsphere II*"). *"A" Manufacturing*, *Janvey*, and *Netsphere II* each unequivocally hold that district court orders authorizing a receiver to sell property are immediately appealable.

The hearing panel's decision to grant the motion to dismiss in this appeal deepens the same conflict. The Appellant petitioned for panel and *en banc* rehearing of the unpublished decision on which the Commission's decision rests, and those petitions remain pending. *SEC v. Barton*, 22-11226, Petition for Panel Rehearing and Petition for Rehearing En Banc (5th Cir. Aug. 3, 2023) (ECF Nos. 77 & 85). The panel in this appeal also

should grant rehearing, reverse its dismissal, and proceed to the merits, in order to avoid this clear conflict with the prior precedents of this Court.

Absent reversal through granting rehearing, this panel's decision would improperly overrule precedential, published decisions of this Court without involving the *en banc* Court, in direct conflict with this Court's general rule that one panel cannot overrule the holding of another panel. *Broussard v. S. Pac. Transp. Co.*, 665 F.2d 1387, 1389 (5th Cir. 1982) (collecting cases); *Janvey*, 404 F. App'x at 914 (applying this rule to reject a Securities and Exchange Commission request for a panel to hold—contrary to prior precedent—that district court orders authorizing a Commission-requested receiver to sell property are not immediately appealable); *see also United States v. Setser*, 607 F.3d 128, 131 (5th Cir. 2010); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999).

Simultaneously with the instant petition for panel rehearing, the Appellant has filed a petition for rehearing *en banc*, which by Circuit rule is first referred to the panel. 5th Cir. I.O.P. 35. The Appellant respectfully submits that the panel act on rehearing to avoid the need for the *en banc* Court to step in to ensure the uniformity of this Court's decisions.

Case: 23-10515 Document: 51-2 Page: 7 Date Filed: 10/31/2023

In this case, the District Court appointed a receiver over nearly all assets connected with the Appellant. Prior to this panel's dismissal, a separate panel of this Court held that the District Court's appointment of a receiver was in error and vacated it. *SEC v. Barton*, 72 F.4th 640, 645 (5th Cir. 2023); *see also* No. 22-11132, Published Opinion On Petition for Rehearing (Aug. 31, 2023) (substituting on rehearing a revised opinion also vacating the order appointing the receiver) (attached hereto as Exhibit A).

The instant appeal concerns a district court order that authorized the Receiver to permanently sell and release all rights to a hotel and apartment complex called Amerigold Suites, owned by one of the Appellant's businesses, Goldmark Hospitality LLC.

This panel should reverse its dismissal for lack of jurisdiction and then summarily vacate the order authorizing the sale by an illegally appointed receiver.

## STATEMENT OF THE ISSUES

I. Whether the panel should reverse its decision dismissing the Appellant's appeal to avoid a direct conflict with this Court's prior precedent holding that orders authorizing a receiver to sell property are

immediately appealable *see United States v. "A" Manufacturing Co., Inc.*, 541 F.2d 504 (5th Cir. 1976); *Securities and Exchange Comm'n v. Janvey*, 404 F. App'x 912, 914 (5th Cir. 2010); and *Netsphere, Inc. v. Baron*, 799 F.3d 327, 333-34 (5th Cir. 2015)?

II. Whether the panel lacked authority from this Court's precedent on the above issue without first involving the *en banc* Court?

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

This case began when the United States Securities and Exchange Commission filed a civil suit against the Appellant, accusing him of securities fraud. Days later, the Commission asked the District Court to appoint a receiver over all entities directly or indirectly controlled by the Appellant. On October 18, 2022, the District Court granted the Commission's request. In the days following, the Receiver removed the Appellant from his company offices, seized all commercial assets controlled by him, and even threw him out of his only home.

Not content to safeguard property pending the outcome of the litigation, the Receiver immediately embarked on a selling spree. The ostensible purpose of this string of sales was to raise money for payment

of his professional fees. He sought and obtained the District Court's approval to sell even the Appellant's house. He then turned his attention to the Appellant's commercial real estate properties, selling a hotel owned for years by the Appellant, a stake in promising real estate, and the Dallas hotel at issue here. The Appellant opposed all of these efforts and appealed the District Court orders approving them. *See SEC v. Barton*, 22-11132, 22-11226, 22-11242, 23-10515, and 23-10516 (5th Cir. 2023).

Then, on March 29, 2023, the District Court authorized the Receiver to sell the Appellant's Dallas hotel, Amerigold Suites. Mr. Barton's appeal from that order is the subject matter of this petition. *SEC v. Barton*, No. 23-10515.

The Receiver and the District Court undertook all of these attempted, permanent alterations of the status quo while even the order appointing the Receiver was under attack in this Court. That appeal was briefed in January, argued in May, and decided on June 28, 2023. (On rehearing, the Court issued a slightly revised opinion on August 31, 2023, attached hereto as Exhibit A). This Court held that the District Court erred in appointing the Receiver and vacated the order doing so. Ex. A

at 13. This Court explained that the District Court did not hold the Commission to the high standards for appointing a receiver, including the requirements to establish "1) a clear necessity to protect the defrauded investors' interest in property, 2) legal and less drastic equitable remedies are inadequate, and 3) the benefits of receivership outweigh the burdens on the affected parties." *Id.* at 8. These high standards must be enforced—before the Government seizes a citizen's property through a receivership—because a "[r]eceivership is 'an extraordinary remedy that should be employed with the utmost caution.'" *Id.* at 8. The Court further held that the District Court erred by placing virtually all of the Appellant's assets into receivership, without a specific inquiry into what property was the proceeds of alleged securities fraud in the underlying case. *Id.* at 11. The Court stayed the receivership's order to the extent it permitted any sales of real property until the Court's full vacatur of that order takes effect, 90 days after issuance of the mandate. *Id.* at 13.

While the challenge to the Receiver's appointment was pending, the Commission argued that the appeals of orders authorizing the illegally appointed Receiver to sell property should be dismissed. On June 19,

2023, a merits panel of this Court dismissed the appeal of the District Court's order authorizing the permanent sale of his only home. *Barton*, 2023 WL 4060191, at *1. There, the Court held that an order authorizing a receiver to sell property "is not a final decision amenable to appellate review, and the collateral order doctrine is not applicable." *Id.*

Another merits panel of the Court, in a case involving the sale of the Appellant's realty interest in two other real estate projects, did not dismiss the appeal and set the case for oral argument in October 2023. *SEC v. Barton*, No. 22-11242, Oral Argument Notice (5th Cir. July 26, 2023) (ECF No. 63).

On June 30, 2023, the Commission moved to dismiss two other appeals in sale orders in this matter, including the one at issue in this case. The Commission's motions relied solely on the unpublished June 19, 2023 panel opinion to argue that the court of appeals lacks jurisdiction over any appeals from district court orders authorizing receivers to sell property. *See*, *e.g.*, *Barton*, No. 23-10515, SEC's Motion to Dismiss (5th Cir. June 30, 2023) (ECF No. 37). On July 10, 2023, the Appellant filed oppositions to the Commission's Motion to Dismiss. *Barton*, No. 23-10515, Barton's Opposition to SEC's Motion to Dismiss

(5th Cir. July 10, 2023) (ECF No. 41). On July 17, 2023, a motions panel dismissed the instant appeal and the appeal of the District Court order authorizing the sale of the Appellant's office building located at 2999 Turtle Creek Boulevard. *Barton*, No. 23-10516, Order Granting Motion to Dismiss Appeal (5th Cir. July 17, 2023) (ECF No. 36-1).

The Appellant timely filed petitions for panel and *en banc* rehearing of the June 19 unpublished opinion, regarding the sale of the Appellant's house, that started these deviations from the Court's precedents. *SEC v. Barton*, No. 22-11226, Petition for Panel Rehearing and Petition for Rehearing En Banc (5th Cir. Aug. 3, 2023) (ECF Nos. 77 & 85). Those petitions remain pending. Simultaneously with this petition for panel rehearing, the Appellant filed a petition for rehearing *en banc*. The Appellant did the same in the other appeal dismissed by the same motions panel.

## ARGUMENT AND AUTHORITIES

This Court order granting the Commission's motion to dismiss, and the unpublished panel decision on which the Commission's motion relied, directly conflict with prior precedential opinions of this Court holding that orders authorizing a receiver to sell property are immediately

appealable. *"A" Manufacturing*, 541 F.2d at 506; *Janvey*, 404 F. App'x at 914; *Netsphere II*, 799 F.3d at 333-34. Because there was no intervening contrary decision by the Supreme Court or this Court sitting *en banc*, the panel lacked authority to hold that there was no jurisdiction over an immediate appeal of an order authorizing a receiver to sell property. *Janvey*, 404 F. App'x at 914 (rejecting Commission request to a panel of this Court to overrule *"A" Manufacturing* and to hold that orders authorizing SEC-requested receivers to sell property are not immediately appealable, explaining that only the *en banc* Court could do so); *see also Setser*, 607 F.3d at 131; *Burge*, 187 F.3d at 466.

The panel should: (i) grant rehearing; (ii) recognize its lack of authority to dismiss an appeal of an order authorizing a receiver to sell property for lack of jurisdiction and deny the Commission's motion without involving the *en banc* Court; and (iii) proceed to the merits of the appeal. When the Court proceeds to the merits, it should summarily reverse the District Court's order authorizing the Receiver to sell the Amerigold Suites property because of this Court's prior ruling that the Receiver was invalidly appointed. Ex. A at 9.

## I. This Panel's Decision Conflicts with Longstanding Precedent That Orders Authorizing a Receiver to Sell Property Are Immediately Appealable.

Nearly 150 years ago, the Supreme Court of the United States set forth a general rule that "a decree confirming a sale . . . may be appealed from" without awaiting a final judgment in the entire underlying case. *Sage v. Cent. R. Co. of Iowa,* 96 U.S. 712, 714 (1877). In 1976, this Court held that an order authorizing a receiver, specifically, to sell real property is immediately appealable. *"A" Manufacturing*, 541 F.2d at 506. And the Court has reaffirmed that holding twice, in 2010 and again in 2015. *Janvey*, 404 F. App'x at 914 (holding that an order authorizing a receiver to sell property is immediately appealable); *Netsphere II*, 799 F.3d at 333-34.

The Court's latest precedential decision on this topic carefully preserved and reaffirmed this Court's long-standing rule that orders authorizing a receiver to sell property are immediately appealable. *Netsphere II,* 799 F.3d at 333-34.[1] The Court explained that the special

[1] There are two key historical panel decisions under the title of *Netsphere, Inc. v. Baron*. The first decision, *Netsphere I*, concerned an appeal to an order appointing a receiver, and set forth the standards a party seeking a receivership must meet to obtain one. *Netsphere, Inc. v. Baron,*

appellate rules for other receivership orders do not alter that principle. *Id.* In doing so, the Court in *Netsphere II* clarified that *"A" Manufacturing*'s holding did not arise from Section 1292(a)(2) of Title 28, the provision of the United States Code directed specifically at the appealability of certain orders related to a receivership. *Id.* To quote the Court:

> *"A" Manufacturing*'s holding—that orders confirming a sale are immediately appealable—was based on its interpretation of three cases that, pursuant to an entirely different jurisprudential line [than those interpreting 28 U.S.C. § 1292(a)(2), regarding appeals from certain orders regarding receivers], had held that orders confirming sales were immediately appealable.

*Netsphere II*, 799 F.3d at 333. That separate line of cases, "spanning a century, clearly establish[es] the rule that an interlocutory order commanding a sale, and one confirming a sale are appealable." *Id.* at 333 n. 35 (quoting *"A" Manufacturing*, 541 F.2d at 506).

---

703 F.3d 296, 301, 305-06 (5th Cir. 2012). A separate panel of this Court relied on the *Netsphere I* decision to overturn the order appointing the receiver in this matter. Ex. A at 8-9. The second decision, *Netsphere II*, involved an appeal to an order approving the fees charged by the receiver. *Netsphere II*, 799 F.3d at 330. In that decision, the Court considered the array of interlocutory orders regarding a receiver's activities that are immediately appealable, holding that the fee order was not one of them. *Id.* at 331-32.

Indeed, the cases the Court relied upon in *"A" Manufacturing* stem from an interpretation of Section 1291 of Title 28 and other doctrines of appellate jurisdiction that regard orders confirming sales as "final decisions" that are immediately appealable. *See "A" Manufacturing*, 541 F.2d at 506. And the principle applies both inside and outside the receivership context. *See Netsphere II*, 799 F.3d at 333.

In other words, orders confirming sales of real property having nothing to do with a receiver also would be immediately appealable. Nothing about the additional statutory authority to seek immediate appeal of certain orders regarding a receivership changes that general principle when a receiver is involved. By clarifying that the rule that receiver sale orders are appealable is grounded *outside* the special statutory provision for appealing orders relating to a receivership, the Court was able to classify as *dicta* the *"A" Manufacturing* panel's reference to Section 1292(a)(2) as one of the bases for that decision. *Id.* at 334. And it was able to adopt a narrower interpretation of Section 1292(a)(2) in denying an immediate appellate right for receiver-related orders other than sale orders. *Id.* at 333.

The panel should grant rehearing to ensure it is not adding to the above-explained conflict with this Court's prior precedents. The unpublished opinion regarding another sale order in this matter, on which the Court presumably relied in this appeal, simply cannot be squared with the above, published precedents. The unpublished opinion held that the special rules for immediate appeals of receiver-related orders foreclose the immediate appealability of orders authorizing receivers to sell property. This Court in *Netsphere II* expressly rejected that reasoning and the panel opinion in this case is at inescapable odds with two prior published opinions in this Circuit.

## II. The Panel Decision Also Conflicts with this Court's Precedent Holding That One Panel Cannot Overrule Another.

If not corrected, the motions panel's decision would overrule prior, precedential panel decisions of this Court. This Court has repeatedly held, however, that a panel may not rule contrary to a prior panel decision of this Court absent an intervening decision by the Supreme Court or by this Court sitting *en banc*. *Setser*, 607 F.3d at 131; *Burge*, 187 F.3d at 466.

When a panel of this Court confronted a prior Commission request to overturn "*A" Manufacturing* and hold that orders authorizing sales of property by receivers are not immediately appealable, that panel correctly held that it lacked the authority to do so and that such a request may only be made to the *en banc* Court. *Janvey*, 404 F. App'x at 914. As the Court explained: "It is well-established that a panel does not have the authority to overrule a previous panel's decision absent an intervening, contrary, or superseding decision by this court, sitting en banc, or by the Supreme Court." *Id.* (*citing Setser*, 607 F.3d at 131).

This principle has been repeated in numerous published, precedential decisions of this Court. *See, e.g.*, *United States v. Castro-Alfonso*, 841 F.3d 292, 297 (5th Cir. 2016) ("The Fifth Circuit rule of orderliness dictates that 'absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court,' a panel cannot overrule another panel's decision."); *United States v. Dial*, 542 F.3d 1059, 1060 (5th Cir. 2008) ("[O]ur rule of orderliness directs that 'one panel of this court cannot overrule the decision of another panel.'"); *Grabowski v. Jackson Cnty. Pub. Defs. Office*, 47 F.3d 1386, 1397 (5th Cir. 1995), *on reh'g en banc*, 79 F.3d 478 (5th Cir. 1996)

("As this court has repeatedly held, one panel cannot overrule another panel, even if one disagrees with the decision."); *Johnson v. Moral*, 843 F.2d 846, 848 (5th Cir. 1988), *on reh'g sub nom.*, 876 F.2d 477 (5th Cir. 1989) ("No rule is more firmly settled in our Circuit than that 'no panel . . . can overrule a decision previously made by another.'"); *Broussard*, 665 F.2d at 1389 ("The general rule in this Circuit is that one panel cannot overrule another panel.").

Importantly, this "rule is strict and rigidly applied." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021). This panel's dismissal, stemming from a prior unpublished merits panel decision making the same error, effectively supplants two panels in the exclusive role of the *en banc* court to overturn a prior Circuit decision. The panel should reverse its dismissal to honor the *en banc* Court's exclusive authority to overrule panel precedent.

## III. After Reversing the Dismissal of the Appeal for Lack of Jurisdiction, the Court Should Summarily Vacate and Remand the District Court's Order Authorizing the Illegally-Appointed Receiver to Sell Property.

This Court disposed of the instant appeal in a short, summary opinion, without reasoning. Reversing course does not require that this

Court commence extensive proceedings on the merits. Now that another panel of this Court has reversed the District Court's order appointing a receiver, this panel (once it has reversed the dismissal of this appeal) should summarily reverse the District Court's order authorizing the sale of the Amerigold Suites property. Ex. A at p. 13.

While it is possible the Commission may seek the appointment of another receiver over a yet unknown scope of assets on remand to the District Court, that possibility does not salvage the efforts of the invalidly appointed receiver to seize and to sell the Appellant's valuable commercial property. The Supreme Court and this Court have a long tradition of summarily vacating and remanding lower court orders when an intervening, binding decision has so thoroughly changed the landscape of the case. *See, e.g., Sheppard v. Louisiana*, 140 S. Ct. 2712, 206 L. Ed. 2d 850 (2020) (Supreme Court granting, vacating, and remanding case to circuit court in light of intervening case law); *Barnes v. Alabama*, 578 U.S. 994, 136 S. Ct. 2446, 195 L. Ed. 2d 259 (2016) (same); *see also Kenemore v. Roy*, 690 F.3d 639, 640, n. 1 (5th Cir. 2012) ("A 'GVR' ('grant, vacate, remand') occurs when the Supreme Court summarily grants a petition for writ of certiorari and simultaneously

vacates the judgment of the lower court and remands for further proceedings for some specified reason."). That is precisely the circumstance here: The Receiver's appointment has now been found illegal and that, of course, infects with error orders authorizing that Receiver to sell property. At a minimum, this is the type of development the District Court should have the opportunity to review first, after summary vacatur and remand.

In the alternative, the panel should reverse the dismissal of the appeal with instructions for the Clerk to set a schedule for merits briefing and oral argument.

## CONCLUSION

If not reversed, the instant panel decision conflicts with long-standing Fifth Circuit precedent establishing that district court orders authorizing receivers to sell property are immediately appealable to this Court. *"A" Manufacturing*, 541 F.2d at 506; *see Janvey*, 404 F. App'x at 914; *Netsphere II*, 799 F.3d at 333-34. The panel should grant rehearing, hold that there is subject matter jurisdiction over the instant appeal, and avoid the conflict with Circuit precedent. The panel should then either (i) summarily reverse the decision below in light of this Court's

intervening ruling that the Receiver was invalidly appointed, Ex. A at p. 13; or (ii) direct the Court to set a schedule for merits briefing and oral argument, following the course in *SEC v. Barton*, 22-11242, regarding another sale order.

Respectfully submitted,

HUNTON ANDREWS KURTH LLP

*/s/ Michael J. Edney*
Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
(202) 955-1500
*medney@huntonak.com*

ATTORNEY FOR APPELLANT
TIMOTHY LYNCH BARTON

Date: August 31, 2023

## <u>**Certificate of Filing and Service**</u>

I hereby certify that on August 31, 2023, this document was filed and served in PDF format using the United States Court of Appeals for the Fifth Circuit's CM/ECF system upon all counsel of record, as follows:

Ezekiel L. Hill
hillez@sec.gov
Securities and Exchange Commission
100 F St., N.E.
Washington, DC 20549

Keefe M. Bernstein
bernsteink@sec.gov
James E. Etri
etrij@sec.gov
David B. Reece
reeced@sec.gov
Securities and Exchange Commission
801 Cherry St., Suite 1900
Fort Worth, TX 76102

*Counsel for the Securities and Exchange Commission*

In addition, I further certify that this electronic filing is an exact copy of the paper document and any privacy redactions have been made. This filing has been scanned for viruses and has been found to be free of viruses.

<u>*/s/ Michael J. Edney*</u>

**<u>Certificate of Compliance</u>**

I hereby certify that this document complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 3,163 words, as calculated using the word processor used to prepare this document, Microsoft Word for Microsoft 365. I also certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*<u>/s/ Michael J. Edney</u>*

# Exhibit A

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 31, 2023
Lyle W. Cayce
Clerk

---

No. 22-11132

---

Securities and Exchange Commission,

*Plaintiff—Appellee*,

*versus*

Timothy Barton,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

---

ON PETITION FOR REHEARING

Before Clement, Graves, and Higginson, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

The petition for panel rehearing is DENIED. We withdraw our previous opinion, reported at 72 F.4th 64, and substitute the following.

The Securities and Exchange Commission ("SEC") sued Defendant Timothy Barton as well as other individual Defendants and corporate entities for securities violations. Barton appeals the district court's order appointing a receiver over all corporations and entities controlled by him. For the

following reasons, we VACATE the order appointing the receiver effective 90 days after the issuance of this court's mandate and REMAND for further proceedings. We also GRANT in part Barton's motion for a partial stay pending appeal.

## I. Background

### a. Factual Background

The SEC alleges the following facts in its complaint. Beginning around 2015, Defendant Haoqiang Fu, a Chinese national, began brokering homes for Defendant Stephen Wall, a Texas-based home builder. After deciding to expand into real estate development projects, they partnered with Barton, a Texas-based real estate developer. Their plan was to offer and sell investment loans to Chinese investors. To effectuate this plan, Barton formed single-purpose entities (the "Wall Entities") to receive and control investor funds, purchase specific parcels of land, and later develop the land into residential housing. After Wall identified the land for projects, Fu marketed the investments to Chinese investors. For each investment contract, the Wall Entity would borrow a fixed amount from investors and use it in conjunction with other investors' funds and money in hand to acquire a specific parcel of land at a specified price. In return, the investors were promised repayment of the principal after two years and interest payments after the first and second year. Between 2017 and 2019, the Wall Entities raised approximately $26.3 million dollars from over 100 investors. However, only two of the nine Wall entities purchased the property described in their respective investment contracts for a total of $2.6 million. Even these purchases were not made using the investor funds earmarked for those properties—instead, the purchases were made using commingled funds from other offerings. In addition, two other entities controlled by Barton (the Relief Defendants) purchased the properties that two Wall

Case: 22-11132 Document: 00516588218 Page: 3 Date Filed: 12/30/2022



entities were supposed to purchase. In all, approximately $23.7 million of the investors' funds were commingled and misused to: 1) pay Barton's personal expenses, 2) pay Fu commissions and fees, 3) make Ponzi payments to the earlier investors, 4) make political contributions, 5) acquire unrelated properties, 6) pay professional fees for unrelated properties, and 7) make payments to Wall.

**b. Procedural Background**

On September 23, 2022, the SEC sued Barton, Wall, Fu, the Wall Entities, Carnegie Development (the managing member of the Wall entities), and the Relief Defendants for securities violations. The SEC sought a permanent injunction, disgorgement of ill-gotten gains, and civil penalties.

Soon after filing its complaint, the SEC moved to appoint a receiver over the Wall Entities, Carnegie Development, the Relief Defendants, and any other entities that Barton directly or indirectly controls. It supported its motion with a declaration from an SEC Staff Accountant who was involved in the investigation. The declaration details the transfer, commingling, and misuse of the investors' funds. In its motion, the SEC argued that the district court may appoint a receiver on a prima facie showing of fraud and mismanagement based on this court's decision in *SEC v. First Financial Group of Texas*, 645 F.2d 429, 438 (5th Cir. 1981) ("*First Financial*"). Barton opposed the motion, arguing that the district court must instead find that a receivership is appropriate under the factors in *Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012).

On October 18, 2022, the district court granted the SEC's motion and appointed a receiver over assets belonging to the Defendant entities, the Relief Defendants, and any other entities directly or indirectly controlled by Barton. It made the following findings in its order:

Case: 22-11132 Document: 00516881894 Page: 24 Date Filed: 08/31/2023



> the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities
>
> . . .
>
> the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

The order gave the receiver numerous powers, including the power to determine the nature of the property interests, take possession of any property belonging to receivership entities, and take any actions necessary to preserve receivership property or prevent its dissipation, concealment, or inequitable distribution.

Barton moved to strike the clause allowing the receiver to take possession of assets belonging to "any other entities that Defendant Timothy Barton directly or indirectly controls." The district court denied his motion. On November 1, 2022, the receiver moved for the district court to supplement its receivership order to include over a hundred newly discovered Barton-controlled entities by name. The district court supplemented its order *nunc pro tunc* to expressly identify 126 newly discovered receivership entities. The receiver then moved for the court to set procedures for the disposition of personal property in the custody of receivership entities. The district court granted the motion and adopted the procedures proposed by the receiver. Barton timely appealed the order appointing the receiver and both follow-up orders. On November 28, 2022,

he moved in the district court for a stay pending appeal of the receivership order. While that motion was still pending, he also asked this court for a stay pending appeal. A motions panel of this court denied his request on January 6, 2023, and the district court denied his request on January 17, 2023.

## II. Jurisdiction & Standard of Review

We have jurisdiction over interlocutory appeals from "orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. § 1292(a)(2). We review a district court's decision to appoint a receiver for abuse of discretion. *Netsphere*, 703 F.3d at 305.

## III. Discussion

### a. The Applicable Test

A central dispute between the parties is what test the district court should have applied before imposing a receivership. Barton argues the district court abused its discretion because it did not apply the standard or make the proper findings under the factors set forth in *Netsphere* ("*Netsphere* factors"). The SEC responds that *Netsphere* is inapplicable and the district court's findings were sufficient under *First Financial*.

In *First Financial*, the SEC sued a securities dealer and its officers for securities violations. 645 F.2d at 431. The district court granted the SEC's motion for a preliminary injunction and enjoined each individual defendant "from offering, purchasing, or selling packages of the specified securities in violation of the federal securities laws, and from disposing of assets and records of First Financial." *Id.* at 432. It also enjoined the defendants from disposing of more than $1,500 in personal assets per week. *Id.* Twelve days later, it granted the SEC's motion for a temporary receiver over the

defendant entity, First Financial. *Id.* The order directed the receiver "to take exclusive control of the corporate assets in order to prevent injury to First Financial investors and to prevent further violations of the federal securities laws." *Id.* at 437-38. Reviewing the injunction order, this court first explained that under the relevant securities laws, preliminary injunctive relief is appropriate upon a showing of "a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws." *Id.* at 434. It concluded that the district court did not abuse its discretion in entering a preliminary injunction. *Id.* at 436. Turning to the district court's appointment of a receiver, it cited a Seventh Circuit case for the following proposition:

> The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of (the corporate defendant's) affairs for the benefit of those shown to have been defrauded. In such cases the appointment of a trustee-receiver becomes a necessary implementation of injunctive relief.

*Id.* at 438 (quoting *SEC v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963)). To protect the public welfare and the interests of those who invested with First Financial, this court concluded that the "appointment of a receiver was a necessary relief measure within the discretion of the court, as an ancillary to preliminary injunctive relief during the continuing civil enforcement proceeding." *Id.* at 439.

The SEC relied upon *First Financial* in both its briefing before the district court and this court, but there is a crucial distinction between that case and the receivership order here. There, the SEC already obtained injunctive relief, so the receivership was "proper as an adjunct to injunctive relief for a securities fraud." *Netsphere*, 703 F.3d at 306 (citing *Keller*, 323

F.2d at 402); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("Courts possess the inherent authority to enforce their own injunctive decrees.") (citation omitted). Here, the SEC did not obtain a preliminary injunction before seeking a receivership, so *First Financial* is inapposite.

That brings us back to *Netsphere*. In that case, a defendant was involved in disputes over the ownership of domain names. *Netsphere*, 703 F.3d at 302. After settling those domain name disputes in related bankruptcy proceedings, the bankruptcy court recommended the appointment of a special master to mediate unpaid legal fees since the defendant kept hiring and firing lawyers without paying them. *Id.* at 303. The district court appointed a special master, but the defendant went on to fire another attorney. *Id.* at 304. The bankruptcy trustee then filed an emergency motion to appoint a receiver, which the district court granted. *Id.*

Before discussing the propriety of the receivership, this court began by noting that a "[r]eceivership is 'an extraordinary remedy that should be employed with the utmost caution' and is justified only where there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties." *Id.* at 305 (citing 12 C. Wright & A. Miller, Federal Practice and Procedure § 2983 (3d ed. 2012)). It catalogued the various contexts where receiverships are used, including "cases of non-compliance with SEC regulations, [where] a receiver may be appointed to prevent the corporation from dissipating corporate assets and to pay defrauded investors." *Id.* at 306. Turning to the facts of the case at hand, it found that none of the purported justifications supported the imposition of a receivership. *Id.* at 307-11.

Since the SEC had not already obtained an injunction against Barton when the SEC moved for a receivership, *First Financial* does not control and

instead, the *Netsphere* factors must be met for a receivership to be justified: 1) a clear necessity to protect the defrauded investors' interest in property, 2) legal and less drastic equitable remedies are inadequate, and 3) the benefits of receivership outweigh the burdens on the affected parties. *See id.* at 305.

**b. The Propriety of the Receivership**

Having concluded that *Netsphere* applies, we consider whether the district court abused its discretion. In its order, the district court justified appointing a receiver by stating it "is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities" and would be "in the public interest by preserving illicit proceeds of fraudulent conduct, [and] penalizing past unlawful conduct and deterring future wrongdoing." Even assuming that these findings could satisfy the first *Netsphere* factor, the order does not address whether legal and less drastic equitable remedies are inadequate or whether the benefits of the receivership outweigh the burdens on the affected parties. *Netsphere*, 703 F.3d at 305.

For the latter two factors, the SEC asks us to consider the district court's reasoning in its order denying Barton's motion for a stay that was filed after this appeal was lodged. In its brief, it provided no authority for the proposition that we can look to a subsequent order denying a separate motion when reviewing an earlier order. However, at oral argument, SEC's counsel claimed we can do so under the exception for actions in aid of an appeal in *Silverthorne v. Laird*, 460 F.2d 1175, 1178 (5th Cir. 1972). "This circuit follows the general rule that the filing of a valid notice of appeal from a final order of the district court divests that court of jurisdiction to act on the matters involved in the appeal, except to aid the appeal, correct clerical errors, or enforce its judgment so long as the judgment has not been stayed or superseded." *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir. 1983). In *Silverthorne*, the district court denied habeas relief,

and the petitioner appealed. 460 F.2d at 1178. During the pendency of the appeal, the district court issued a written opinion "in which he thoroughly discussed the rationale in support of his earlier order denying habeas corpus relief." *Id.* This court found that the written opinion's amplified views aided the appeal, so it fell under that exception. *Id.* at 1178-79. Unlike *Silverthorne*, the order the SEC asks us to consider is not a fuller explanation of the earlier order granting a receivership—it is a denial of a separate motion. Further, as Barton points out, the district court's order denying the stay discussed events and actions that took place *after* the receivership was already in place. "'Meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted.'" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 n.4 (5th Cir. 2008) (en banc) (quoting *Gurmankin v. Costanzo*, 626 F.2d 1115, 1119–20 (3d Cir. 1980)). The reasoning in the subsequent order goes beyond the basis on which the district court originally acted, and *Silverthorne* does not give us license to consider it.

Constraining our review to the district court's limited reasoning in its original order, we cannot say whether it abused its discretion. *See Gonzalez v. Assocs. Health & Welfare Plan*, 55 F. App'x 717 (5th Cir. 2002) ("Although we cannot say the court abused its discretion by denying prejudgment interest, the district court's failure to explain its reasoning frustrates meaningful appellate review."). Accordingly, we will vacate the appointment of the receiver and remand so that the district court may consider whether to appoint a new receivership under the *Netsphere* factors. When faced with a similar situation, the Third Circuit opted to delay vacatur of the receivership instead of vacating it immediately. *See KeyBank Nat'l Ass'n v. Fleetway Leasing Co.*, 781 F. App'x 119, 123 (3d Cir. 2019). We find the Third Circuit's approach prudent here given the breadth of the receivership and the possibility that a new receivership would cover some of the same entities.

Thus, we will vacate the current receivership order effective 90 days from the issuance of this court's mandate.

### c. The Receivership's Jurisdiction

Barton next argues that the district court erred by placing multiple entities he controls in the receivership without any showing that they received or benefitted from ill-gotten investor funds. The SEC responds that the district court acted within its discretion by including all Barton-controlled entities in the receivership. Because it alleges that Barton has engaged in extensive commingling of funds, it claims that Barton's control is an effective proxy for placing an entity in the receivership even if it had not yet traced the funds to that entity.

In *Netsphere*, this court rejected the district court's determination that a receivership was necessary for the defendant to pay his debts to former attorneys because "the jurisdictional principle that a court's equitable powers do not extend to property unrelated to the underlying litigation applies with equal force to receiverships. A court lacks jurisdiction to impose a receivership over property that is not the subject of an underlying claim or controversy." 703 F.3d at 310. In support, it cited *Cochrane v. W.F. Potts Son & Co.* where this court held that a receivership was proper only over the series of bonds subject to litigation, not the other series of bonds that were not subject to the complaint and over which the bondholder did not claim an interest. *Id.* (citing *Cochrane v. W.F. Potts Son & Co.*, 47 F.2d 1026, 1027-29 (5th Cir. 1931)). Accordingly, *Netsphere* held that the district court could not impose a receivership over the plaintiff's personal property or assets owned by certain entities because those assets were not sought in or the subject of the underlying litigation. *Id.*

The SEC relies on *FDIC v. Faulkner* to support the district court's inclusion of all Barton-controlled entities in the receivership regardless of

whether they received or benefitted from ill-gotten funds. 991 F.2d 262, 267-68 (5th Cir. 1993). In *Faulkner*, the defendants allegedly engaged in fraudulent real estate speculation schemes. *Id.* at 264. The FDIC sought a preliminary injunction against the defendants to limit their ability to transfer assets, and the district court granted it. *Id.* On appeal, the defendants argued that the injunction was too broad since it froze assets that were not obtained through alleged fraudulent activities. *Id.* at 267. Since the defendants refused to aid the district court in determining which of the assets were traceable to the alleged fraud, this court held that the district court "did not err in freezing all of the [defendant's] assets, pending a determination through limited discovery of which assets are traceable to [defendant's] alleged fraudulent activities." *Id.* at 268.

*Faulkner* does not support the district court's actions here. Under *Faulkner*, the SEC could have sought an injunction freezing asset transfers while it traced the funds and determined which entities should be placed in the receivership. But it did not. Since a receivership's jurisdiction extends only over property subject to the underlying claims, the district court abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefited from the ill-gotten funds. *Netsphere*, 703 F.3d at 310. Should the district court decide that a new receivership is justified on remand, it can only extend over entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**d. Stay Pending Appeal**

After oral argument, Barton moved for a partial stay of certain receivership activities pending appeal. He asked this court to: 1) order the receiver to retain possession of all corporations and corporate property pending a final decision on the merits, 2) suspend the receiver's power to sell

or dispose of assets belonging to receivership entities until 60 days after a final opinion on the merits from this court, and 3) stay the receiver's ability to undertake receivership activities that go beyond caring for the seized assets pending a final decision on the merits. Barton also sought emergency relief from the transfer of one of the receivership entity's possessory interests in a particular property. We denied his emergency request as moot but carried the remainder of his motion with the case.

At the outset, the SEC challenges whether Barton's motion complies with Federal Rule of Appellate Procedure 8. Under Rule 8, stay motions ordinarily must first be presented to the district court "unless it clearly appears that further arguments in support of the stay would be pointless in the district court." *Ruiz v. Estelle*, 650 F.2d 555, 567 (5th Cir. 1981). The district court denied Barton's initial motion for a stay pending appeal. When Barton sought to preliminarily enjoin the receiver's auction of contents of a particular receivership property, the district court denied his request explaining that "[Barton's motion] requests the same relief, and on the same grounds, that the Court has already denied multiple times, and the Fifth Circuit has already denied once: a stay of the Receiver's activities pending appeal or final judgment." Given the clear indication that the district court would have denied this motion, we find that Barton's motion satisfies Rule 8 because moving first in the district court would have been pointless. *Id.*

Barton's first and third requests are now moot since we have reached a final decision on the merits. However, his second request is not moot because it seeks relief that extends 60 days beyond the issuance of a final decision. For his second request, we consider four factors in deciding whether to grant a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks and citation omitted). In light of our vacatur of the receivership order, we conclude that Barton has made the proper showing under the factors and is entitled to a partial stay.

## IV. Conclusion

For the foregoing reasons, we VACATE the district court's order appointing a receiver effective 90 days from the issuance of this court's mandate and REMAND for further proceedings consistent with this opinion. We also GRANT in part Barton's motion for a partial stay pending appeal: the receiver's power to sell or dispose of property belonging to receivership entities, including the power to complete sales or disposals of property already approved by the district court, is immediately suspended, and this suspension will remain in effect until the receivership order is vacated 90 days from the issuance of this court's mandate. This suspension does not apply to activities in furtherance of sales or dispositions of property that have already occurred or been approved by the district court. "Activities in furtherance" do not include the completion of the sale of any property. Should the district court enter a new receivership order before the present order is vacated, this partial stay has no bearing on any actions a receiver may take under the new order.

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 31, 2023

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 22-11132 SEC v. Barton
USDC No. 3:22-CV-2118

Enclosed is the opinion entered in the case captioned above.

Sincerely,

LYLE W. CAYCE, Clerk

By: Christina Rachal
Christina C. Rachal, Deputy Clerk
504-310-7651

Mr. Keefe Michael Bernstein
Mr. Michael Christopher Dingman
Mr. Michael J. Edney
Mr. Ezekiel Levenson Hill
Mr. Edwin A. Huffman
Mr. John Joseph Kane
Ms. Charlene Cantrell Koonce
Ms. Karen S. Mitchell
Mr. David B. Reece
Mr. Andrew Robertson
Mr. Richard Bratton Roper III
Mr. Cortney Christopher Thomas